**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

NORMAN VIGIL,

       Plaintiff,

v.                                                            CIV No. 16-47 KG/KK

NEW MEXICO PUBLIC
EDUCATION DEPARTMENT,

       Defendant.

<u>**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**</u>

       **THIS MATTER** is before the Court upon *Defendant's Motion to Dismiss the First, Second and Third Causes of Action of Plaintiff's Complaint Based on Exhaustion Defects*, (Doc. 15), filed March 3, 2016; *Defendant's Substituted Memorandum in Support of It's* (sic) *Motion to Dismiss [Based on Rules 12(b)(1) and (6)] the First, Second and Third Causes of Action of Plaintiff's Complaint based on Exhaustion Defects* (the "Motion"), (Doc. 17), filed March 8, 2016; *Plaintiff's Response to Defendant's Motion to Dismiss* (the "Response"), (Doc. 19), filed March 29, 2016; *Defendant's Reply to Plaintiff's Response Regarding the Motion to Dismiss [Based on Rules 12(b)(1) and (6)] the First, Second and Third Causes of Action of Plaintiff's Complaint based on Exhaustion Defects* (the "Reply"), (Doc. 22), filed April 14, 2016; and *Defendant's Notice of Partial Withdrawal of its Motion to Dismiss [Based on Rules 12(b)(1) and (6)] and Affirmance and Renewal of Motion to Dismiss with Respect to Plaintiff's Retaliation Claims in Counts I and III of the First Amended Complaint* (the "Notice of Partial Withdrawal"), (Doc. 38), filed May 23, 2016.

United States District Judge Kenneth Gonzales referred this case to Magistrate Judge Carmen E. Garza to perform legal analysis and recommend an ultimate disposition. (Doc. 75). After considering the parties' filings and the relevant law, the Court **RECOMMENDS** that the Motion to Dismiss with respect to Plaintiff's retaliation claims in the first and third counts of the Amended Complaint be **GRANTED**.

## I.    Background

### A.  *Procedural History*

Plaintiff filed his *Complaint for Damages for Discrimination and Retaliation* (the "Complaint") in the First Judicial District Court for the State of New Mexico. (Doc. 1 at 1). Plaintiff's Complaint alleged that Defendant violated his rights under Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*; the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*; the New Mexico Human Rights Act ("HRA"), NMSA 1978, §§ 28-1-1 *et seq.*; the New Mexico Whistleblower Protection Act ("WPA"), NMSA 1978 §§ 10-16C-1 *et seq.*; and committed the common law tort of constructive discharge. (Doc. 1-1, Ex. A at 1).

Defendant removed the case to this Court on January 22, 2016. (Doc. 1). Plaintiff has asserted causes of action for disability and sex discrimination in violation of the ADA, Title VII, HRA, WPA, as well as constructive discharge and retaliation in violation of the ADA and HRA. (Doc. 1-1, Ex. A at 8-11; *See* Doc. 38 at 2 n.1). Pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6), Defendant moved to dismiss the first, second, and third causes of action in the Complaint for failure to exhaust. (Doc. 17). After Plaintiff filed his Response to the Motion, he filed a *First Amended Complaint for Damages for Discrimination and Retaliation* (the "Amended Complaint"), in which

Plaintiff alleged that he exhausted his administrative remedies for all of his claims. (*See* Doc. 33). Based on the Amended Complaint, Defendant filed notice with the Court that it agreed to partially withdraw its Motion. (*See* Doc. 38). Therefore, currently before the Court is Defendant's argument that Plaintiff's retaliation claims based on the ADA and HRA, as set forth in the first and third causes of action, (*See* Doc. 33 ¶¶ 70, 80, 81), should be dismissed for failure to exhaust administrative remedies. (Doc. 38 at 1, 3).

   B.  *Factual Allegations*

The facts are alleged as follows: Plaintiff worked for Defendant from 1997 to 2014 as a computer/IT specialist. (Doc. 1-1, Ex. A ¶ 5). Beginning in 2000, Defendant moved the IT staff, including Plaintiff, to the basement of the Jerry Apodaca Education Building ("JAE Building"). (Doc. 1-1, Ex A ¶ 8). In 2010, the New Mexico Environment Department completed an environmental assessment in the area that revealed potential sources of subsurface contamination near the JAE Building. (Doc. 1-1, Ex A ¶ 10). At approximately the same time, employees of Defendant began to suffer from respiratory symptoms and noticed an odor in the JAE Building basement. (Doc. 1-1, Ex. A ¶ 11).

Defendant relocated the IT staff in the JAE Building from the basement to the third floor in December 2010. (Doc. 1-1, Ex. A ¶ 12). After the move, the Communications Workers of America union ("CWA") requested an investigation into the air quality in the JAE Building basement. (Doc. 1-1, Ex. A ¶ 13). The investigation revealed that the JAE Building basement was inadequately ventilated and had mold contamination, elevated levels of Freon, and elevated levels of organic compounds. (Doc. 1-1, Ex. A ¶ 13). In 2012, asbestos was also found in the JAE Building basement. (Doc. 1-1, Ex. A ¶ 15).

Plaintiff suffered health problems at this time, including respiratory, neurological/physiological, and psychological issues. (Doc. 1-1, Ex. A ¶ 17-19). Plaintiff was diagnosed with traumatic neurotoxicity, Post Traumatic Stress Disorder ("PTSD"), Major Depressive Disorder, and anxiety, all of which his doctors linked to his exposure to contaminants in the JAE Building basement. (Doc. 1-1, Ex. A ¶ 20). Beginning in 2010, Plaintiff requested and was approved for worker's compensation due to his illnesses; however, his requests to be moved from the JAE Building to another building were denied by Defendant. (Doc. 1-1, Ex. A ¶¶ 23, 25). Plaintiff asserts that during this time he was ridiculed by his supervisors, especially after being directed by his doctor to wear a respirator mask to work starting in March 2013. (Doc. 1-1, Ex. A ¶¶ 26-29).

In September 2013, Defendant moved IT employees back to the JAE Building basement after tests showed that contamination levels were below levels required by the Occupational Safety and Health Administration. (Doc. 1-1, Ex. A ¶ 30). Soon thereafter, CWA filed a suit to prevent employees from having to work in the JAE Building basement. (Doc. 1-1, Ex. A ¶ 31). Plaintiff signed an affidavit stating his health problems and his belief that they were linked to the JAE Building in support of this lawsuit. (Doc. 1-1, Ex. A ¶ 32). In a settlement between CWA and the State of New Mexico, Defendant agreed to do further testing for contaminants in the JAE Building basement. (Doc. 1-1, Ex. A ¶ 33).

In February 2014, Plaintiff was asked to once again move down to the JAE Building basement, which he agreed to do on a trial basis. (Doc. 1-1, Ex. A ¶¶ 34-35). Soon after, Plaintiff began experiencing chest heaviness, headaches, and panic attacks and asked to work in a different building. (Doc. 1-1, Ex. A ¶¶ 36-37). Plaintiff was moved

4

to an office on the first floor of the JAE Building. (Doc. 1-1, Ex. A ¶ 39). Plaintiff continued to experience health problems in the office on the first floor and again requested a transfer to a different building. (Doc. 1-1, Ex. A ¶¶ 41-42). Plaintiff continued to ask Defendant to move during the summer and fall of 2014, but Defendant refused to move him to another building, although two female employees' requests to be moved were granted. (Doc. 1-1, Ex. A ¶¶ 48-50).

Plaintiff filed a Charge of Discrimination (the "Charge") with the Equal Employment Opportunity Commission ("EEOC") and the New Mexico Human Rights Bureau ("HRB") in July 2014. (Doc. 17-1, Ex. A). In October 2014, the Worker's Compensation Administration ordered Defendant to move Plaintiff from the JAE Building for health reasons. (Doc. 1-1, Ex. A ¶ 52). Defendant had Plaintiff leave the JAE Building, but did not move him to another building, so Plaintiff went on worker's compensation. (Doc. 1-1, Ex. A ¶ 53). After being hospitalized with psychological issues in October 2014 and being unable to come to an agreement with Defendant in November 2014, Plaintiff applied for duty disability benefits. (Doc. 1-1, Ex. A ¶¶ 54-55). Plaintiff's disability application was approved and made retroactive to June 2014. (Doc. 1-1, Ex. A ¶ 57). On October 3, 2015, Plaintiff received his Right to Sue Letter from the EEOC and subsequently filed his Complaint. (Doc. 19 at ¶ 9).

## II.    Standard of Review

Federal courts are courts of limited jurisdiction. *United States ex rel. King v. Hillcrest Health Ctr., Inc.*, 264 F.3d 1271, 1278 (10th Cir. 2001).  In general, a plaintiff has the burden to demonstrate that a court has jurisdiction to hear his case. *Campos v. Las Cruces Nursing Ctr.*, 828 F. Supp. 2d 1256, 1265 (D.N.M. 2011) (citing *Steel Co. v.*

*Citizens for a Better Env't*, 523 U.S. 83, 104 (1998) ("[T]he party invoking federal jurisdiction bears the burden of establishing its existence.")).

Under Rule 12(b)(1), a party may assert that the court lacks subject matter jurisdiction over a claim. FED. R. CIV. P. 12(b)(1). Motions to dismiss for lack of subject matter jurisdiction "'generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based.'" *Campos*, 828 F. Supp. 2d at 1265 (quoting *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002)). On a facial attack, "'a plaintiff is afforded safeguards similar to those provided in opposing a [R]ule 12(b)(6) motion: the court must consider the complaint's allegations to be true.'" *Id.* (quoting *Alto Eldorado Partners v. City of Santa Fe*, No. CIV. 08-0175 JB/ACT, 2009 WL 1312856, at *8 (D.N.M. Mar. 11, 2009) (unpublished)).

By contrast, on a factual attack, "'a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).'" *Id.* (quoting *Alto Eldorado Partners,* 2009 WL 1312856, at *8-9). "[A]t issue in a factual [Rule] 12(b)(1) motion is the trial court's jurisdiction – its very power to hear the case." *Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981)). In the context of exhaustion claims, it is appropriate for a court "to consider evidence beyond the pleadings in resolving a challenge to subject-matter jurisdiction." *Id.* at 1262 n.3 (quoting *Jenkins v. Educ. Credit Mgmt. Corp.*, No. 05-2007, 212 Fed. Appx. 729, 733 (10th Cir. Jan. 4, 2007) (unpublished)).

Here, Defendant challenges whether Plaintiff exhausted his administrative remedies as to the retaliation claim.  By challenging whether Plaintiff followed the proper administrative procedure prior to filing this lawsuit in this Court, Defendant's Motion challenges the facts underlying Plaintiff's allegations of jurisdiction. *See Davis ex rel. Davis v. United States*, 343 F.3d 1282, 1295-96 (10th Cir. 2003). Therefore, Defendant's Motion presents a factual attack, rather than a facial attack, as to whether this Court has jurisdiction over this case. Accordingly, the Court does not presume the truthfulness of Plaintiff's allegations, and the Court may consider evidence outside of the pleadings in resolving the Motion.

### III.    Analysis

The issue before this Court is whether Plaintiff exhausted his administrative remedies as to the retaliation claims based on the ADA and HRA. In its Motion, Defendant argues that Plaintiff did not exhaust his administrative remedies with respect to the retaliation claims. (Doc. 17 at 9-10). Specifically, Defendant contends that Plaintiff did not raise the retaliation claims in the original EEOC filing and may not expand the claim to encompass more claims than previously brought before the EEOC. (Doc. 17 at 9-10). Plaintiff responds that he exhausted his administrative remedies. (Doc. 19 at 10-13). Plaintiff argues that the written description of the events in the Charge and information provided by Plaintiff in an EEOC Intake Questionnaire (the "Intake Questionnaire") prove that the retaliation claim "'could reasonably have been expected to follow' the [C]harge." (Doc. 19 at 13) (quoting *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1187 (10th Cir. 2007)).

Under Title I of the ADA, a plaintiff must exhaust his administrative remedies prior to filing a lawsuit. *Jones*, 502 F.3d at 1183 (citing *MacKenzie v. City & Cnty. of*

*Denver*, 414 F.3d 1266, 1274 (10th Cir. 2005)). "The first step to exhaustion is the filing of a charge of discrimination with the EEOC." *Id.* (citing *Jones v. Runyon*, 91 F.3d 1398, 1399 n. 1 (10th Cir. 1996)).

After concluding whether a plaintiff filed a Charge, the Court must "determine the scope of the allegations raised in the EEOC charge because '[a] plaintiff's claim in federal court is generally limited by the scope of the administrative investigation that can reasonably be expected to follow the charge of discrimination submitted to the EEOC.'" *Jones*, 502 F.3d at 1186 (quoting *MacKenzie*, 414 F.3d at 1274) (citing *Jones v. Sumser Ret. Vill.*, 209 F.3d 851, 853 (6th Cir. 2000) ("[T]he facts alleged in the charge must be sufficiently related to the claim such that those facts would prompt an investigation of the claim.")). As Plaintiff notes, a Court should liberally construe charges that are filed with the EEOC in deciding whether a claim has been administratively exhausted. *Id.* However, a court's "inquiry is limited to the scope of the administrative investigation that can reasonably be expected to follow from the discriminatory *acts* alleged in the administrative charge." *Id.* (emphasis in original).

The Charge filed with the EEOC must contain facts about the discriminatory and retaliatory actions alleged. *Id.* "The failure to mark a particular box creates a presumption that the charging party is not asserting claims." *Id.* (citing *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1260 (10th Cir. 1998)). However, that presumption may be rebutted "if the text of the charge clearly sets forth the basis of the claim." *Id.*

Here, Plaintiff filed a Charge with the EEOC on July 18, 2014. (Doc. 17-1, Ex. A). The Charge requires an individual to check boxes based on the type of discrimination the individual is claiming. (*See* Doc. 17-1, Ex. A). Plaintiff checked the boxes for sex

8

and disability discrimination, but did not check the box for retaliation. Because Plaintiff

did not check the retaliation box in the Charge, he must show that the narrative in the

Charge puts Defendant on notice that Plaintiff is alleging retaliation. In the narrative

portion of the Charge, Plaintiff stated:

> STATEMENT OF HARM: I've been employed by the [Defendant] since 1997 and my current position is IT Systems Manager-IV. I have been harassed by the Deputy Secretary and denied reasonable accommodation requests. I am aware of female employees who have been given reasonable accommodations and I have never been given a valid reason as to why my requests have been denied. I am currently on Workman's Comp[ensation] leave due to the situation at work.
>
> STATEMENT OF DISCRIMINATION: I believe I have been discriminated against due to my sex (Male) and due to disability and this is in violation of Title VII of the Civil Rights [A]ct of 1964, as amended and the Americans [w]ith Disabilities [A]ct.

(Doc. 17-1, Ex. A).

Plaintiff argues that his statement in the Charge, "I have been harassed by the

Deputy Secretary and denied reasonable accommodation requests," refers to the

retaliation he alleges. (Doc. 19 at 12).  Plaintiff's Charge clearly describes his

allegations of sex and disability discrimination; however, Plaintiff does not specifically

allege or describe retaliation. Thus, Plaintiff does not clearly set forth the basis of the

retaliation claim, and Defendant was not put on notice that Plaintiff alleged retaliation.

As stated above, Plaintiff's claim in this Court is limited by the EEOC investigation. The

EEOC Determination letter states that "[b]ased upon the evidence and the record as a

whole, there is reasonable cause to conclude that [Plaintiff] was discriminated against

because of his disability and sex (male) [in] violation of the ADA and Title VII." (Doc. 19-

3, Ex. 1B). It is clear from this Determination letter that the EEOC did not investigate a

claim of retaliation based on Plaintiff's Charge. Therefore, Plaintiff did not exhaust his administrative remedies with regard to the retaliation charge.

Although Plaintiff did not check the retaliation box in the Charge, he did check the retaliation box on his Intake Questionnaire. Plaintiff asserts that he does not know why he did not check the retaliation box on the Charge. (Doc. 19-1, Ex. A, 1A). Although Plaintiff admits that he cannot transfer allegations from the Intake Questionnaire to his Charge, he states that the Intake Questionnaire "sheds light on what [he] intended by the harassment allegations." (Doc. 19 at 13 n.3) (citing *Green v. JP Morgan Chase Bank N.A.*, No. 11-5153, 501 Fed. Appx. 727, 731-32 (10th Cir. Nov. 1, 2012) (unpublished)).

In *Green*, the Tenth Circuit held that a District Court did not err in relying on the information in a Charge rather than an Intake Questionnaire. *Id.* at 731. The Tenth Circuit stated that "it would defeat the statutory scheme to find exhaustion where an employee includes a claim in the intake questionnaire, but then omits it in a timely subsequent formal charge that forms the basis for the administrative proceedings." *Id.* (citing *Barzanty v. Verizon Pa., Inc.*, No. 08-1010, 361 Fed. Appx. 411, 415 (3d Cir. Jan. 20, 2010) (unpublished)). The Intake Questionnaire and Charge have different purposes. The Intake Questionnaire "facilitates 'pre-charge filing counseling' and allows the [EEOC] to determine whether it has jurisdiction to pursue a charge," and is not shared with an employer. *Barzanty*, 361 Fed. Appx. at 415 (citing *Fed. Express Corp. v. Holowecki*, 552 U.S. 389 (2008)). Indeed, Defendant never saw the Intake Questionnaire filled out by Plaintiff. (Doc. 22 at 4). By contrast, the Charge "serves to define the scope of the [EEOC's] investigation and to notify the defendant of the

charges against it." *Id.* (citing 42 U.S.C. § 2000e-5(b)). Therefore, "'[a] plaintiff cannot be allowed to transfer the allegations mentioned only in the questionnaire to the charge itself. Not only would this be circumventing the role of the Commissioner, but it would be prejudicial to the employer.'" *Green*, 501 Fed. Appx. at 731 (quoting *Barzanty*, 361 Fed. Appx. at 415).

For this reason, the Court will not look to the Intake Questionnaire to "shed light" on Plaintiff's claims, but will instead look only to the Charge. Because the Charge does not make any allegation of retaliation, the Court recommends dismissing the retaliation claims for failure to exhaust administrative remedies.

## IV.    Recommendation

For the reasons discussed above, the Court finds that Plaintiff did not exhaust his administrative remedies as to the retaliation claims.

**IT IS THEREFORE RECOMMENDED** that *Defendant's Motion to Dismiss the First, Second and Third Causes of Action of Plaintiff's Complaint Based on Exhaustion Defects*, (Doc. 15), be **GRANTED**.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE